## BOARD OF PUBLIC INSTRUCTION OF PALM BEACH COUNTY v. FIRST FLORIDA UTILITIES, Inc. (No. 2).

No. 66-C-2281.

Circuit Court, Palm Beach County.

September 29, 1967.

44

Bryan & Jackson, Palm Beach, for plaintiff.

Cromwell, Remsen & Pfaffenberger, Riviera Beach, for defendant.

JAMES R. KNOTT, Circuit Judge.

*Final judgment:* This controversy had its inception when the Palm Beach County Board of Public Instruction declined to pay to First Florida Utilities, Inc. the sum of $6,427.50 as a prerequisite to the furnishing of water and sewer service to the newly completed Wynnebrook Elementary School located within the utility company's franchise area.

The board took its problem to the Florida Public Service Commission which ordered the company to make the necessary connections, or permit the same to be made, so that water and sewer service could be provided to the Wynnebrook School without delay, for the opening of the 1966 fall term. The order required the board to place the disputed fee in escrow, which was done. The necessary water and sewer connections were made by the board. The company then severed the lines, contending that the commission had no jurisdiction and that its order was invalid. The company later filed a suggestion for writ of prohibition before the Supreme Court of Florida, which in due course denied the writ, without opinion, First Florida Utilities, Inc. v. Florida Public Service Commission, 192 So.2d 491.

The board, advised of the refusal of the company to comply with the order of the Public Service Commission, instituted this action by filing its complaint for mandatory injunction, seeking judicial enforcement of the same relief as had been previously granted by the commission.

This court granted a mandatory injunction requiring the company to make the necessary water and sewer connections, or allow the board to do so. The court's order required the board

to deposit the amount of the contested charges in the registry of the court. The board thereafter, on September 11, 1966, again made the necessary service connections. On the following day the company severed the water line and sewer main in disregard of the order. A rule then issued from this court requiring the company to show cause why it should not be held in contempt. The court also authorized the board to connect the service lines again, and ordered the county sheriff to prevent further interruption by the company. The board thereupon reconnected the water and sewer lines without further incident.

This court thereafter held that the action of the company in severing the lines constituted civil contempt of court, 28 Fla. Supp. 175. The Fourth District Court of Appeal affirmed the contempt order, without opinion, 200 So.2d 866.

The cause is now before the court for determination of — (1) the amount of compensatory damages for which the company may be liable for its contempt of court, and (2) the propriety of the charge of $6,427.50 sought to be collected by the company, variously termed a "connection fee," "aid in construction fee," "plant capacity fee," or "service availability fee."

On the question of compensatory damages for contempt — the testimony shows that the cost to the board to reconnect utility lines which on two occasions had been severed by the company totaled $789.53, which the court finds the board entitled to recover as compensatory damages.

We next consider the propriety of the charge of $6,427.50. In explanation of its charge, the company, in a letter dated July 22, 1966, to the board's contractor, stated —

> "This cost represents the actual expense incurred to extend mains and services to the premises together with a charge based upon the water and sewer plant capacity necessary to service this connection."

The utility company made it clear in the same letter, however, that the said "actual expense" would not be incurred by the company, but would be the responsibility of the board —

> "The installation of the water and sewer mains, services, and meter will be your responsibility . . .

> "As soon as the above mentioned connection fee of $6,427.50 together with the security deposit of $200 is received, you may begin installation of the mains, services, and meter . . ."

The record shows —

1) that it was not the intention of the company to pay any part of the installation cost, and that in fact, it did not;

2) that the charge did not contemplate or embrace any costs to be expended in the extension of, or addition to, the existing facilities of the company;

3) that the purpose of such charges was ultimately to recoup to the company its entire capital investment; and

4) that the *amount* of such charges was limited only by its "acceptability to the consumer," i.e., in effect, what the traffic would bear.

A witness called by the company as a rate expert expressed the opinion that such charges, designed to return to the company its complete capital investment, are reasonable, but that a return of more than that would be unreasonable. Assuming, *arguendo*, the correctness of this theory, it should be observed that this witness was unable to determine on a factual basis whether these charges would return more or less than the capital investment. He testified that the amount of water used by a consumer as compared to the complete capacity of the plant facility is the major consideration in arriving at the amount of a connection fee, but admittedly he did not know the capacity of the utility plant in this case, nor the number of prospective consumers in the franchise area. Indeed, the record is silent with respect to those matters and there is no basis for a determination by this court of what would constitute a reasonable charge. Even the president of the company, who fixed the amount of the charge, did not explain the method used to calculate it.

But regardless of the state of the record regarding the *reasonableness* of a charge of this nature, this court is of the opinion that the governing statutory authority, chapter 367, Florida Statutes, does not authorize or recognize the propriety of any charge where the utility company incurs no cost to make the service available.

§367.11, Florida Statutes, allows a water and sewer utility company to require — "reasonable sums for service availability or reasonable deposits guaranteeing compensatory revenues . . . or reasonable contributions in aid of construction to help defray the cost of facilities which will be used or useful in furnishing service, or any combination thereof" *if,* and only if, "the furnish-

ing of service . . . would require the extension of an addition to its existing facilities."

The present case does not involve any cost to the utility company for extension of facilities, or for construction of facilities, or any cost to increase the capacity of the plant in order to make the service available.

The charges allowed by the statute contemplate reimbursement to the utility of costs expended by it in order to supply the new service. Because the company has not been required to expend any money by the connection of this school to its system, it follows that the statute does not provide for or allow such a charge.

§367.14(7), Florida Statutes, authorizes a water and sewer utility company to charge rates to its customers for water and sewer service "which will provide to the public utility a fair return on the fair value of the property of the public utility used and useful in the public service . . ."

Simply expressed, the utility is entitled to a fair return on its capital investment. Property which the utility acquires but does not pay for is not properly included in its rate base. Southern Gulf Utilities, Inc. v. Metropolitan Dade County Water and Sewer Board, 180 So.2d 481.

If a utility company could recoup the value of its property, it would have nothing upon which to base its rates for the supplying of service. The statute does not authorize charges intended to repay its capital investment. One is not entitled to a return on his money and at the same time have a return of his money.

The company contends, finally, that the charge must be upheld if consistent with similar charges to its other customers in the past — otherwise, it is argued, the result would be a lack of uniformity in its charges which would constitute unlawful discrimination against such other customers. For this court to declare an improper charge to be unassailable simply because it had escaped challenge in the past, would be equivalent to the granting of a license to continue an unlawful practice in perpetuity. Justice would demand, rather, that charges to old customers made without any proper basis be refunded or adjusted.

Upon consideration, it is ordered and adjudged that the defendant, First Florida Utilities, Inc. pay to the Board of Public Instruction of Palm Beach County the sum of $789.53 as com-

pensatory damages, together with the costs of this action hereby taxed against the defendant in the sum of $210.14, and that upon such payment defendant shall stand purged of contempt.

It is further ordered and adjudged that the clerk of this court shall return to the plaintiff the sums deposited by plaintiff in the registry of the court, less his fee authorized by law. Plaintiff shall thereupon pay to defendant the sum of $200 as a security deposit, which is not in controversy.